DeadericK, J.,
delivered tbe opinion of tbe court:
Plaintiff in error was convicted in tbe circuit court of Henderson county, of burglary, with intent to commit a rape, and a new trial having been refused, bas appealed to this court.
Tbe facts of tbe case bave been fully argued by counsel for tbe plaintiff in error, and it is very earnestly and forcibly insisted that they do not warrant or sustain tbe verdict of tbe jury.
Tbe indictment contained two counts — one that tbe bur-glarious entry was made with intent to commit a larceny *505 of the goods of Mrs. Lewis; tbe other that the intent was to have, carnal knowledge of her, forcibly, and against her will.
As to the fact of the entry into the mansion house of Mrs. Lewis, in the night time, there is no controversy, but the intent with which the entry was made is questioned.
Certain alleged confessions made to the witnesses, Duck-worth and Hanna, soon after they had punished by personal chastisement, the plaintiff in error, it is insisted were improperly admitted as evidence. According to the testimony of these witnessés, we do not think the admission by plaintiff in error that he had entered .the house of Mrs. Lewis, was extorted by fear or elicited by persuasion or other inducement, held out by them, or either of them. The statement seems to have been made without solicitation from any source, the witnesses not asking, or, as far as we can see, expecting the admission to be made that he had entered the house as charged.
There was, therefore, no error in the admission of this testimony, nor, for the same reason, was there any error in admitting the testimony of England, the justice of the peace, and others, as to the statements made by O’Neal when the warrant was read to him. The justice, according to the testimony, cautioned the prisoner that any admissions made by him would be admissible as evidence against him. Whether the prisoner understood the contents of the warrant, and the nature of the charge therein contained was a question to be left to the jury under the evidence of all the circumstances attending the reading and explanation to him. The jury ought to be well satisfied that the prisoner understood from the reading of the warrant to him the extent of the offense charged — that is, that it charged not only the breaking and entering the house in the night time, but that it charged the breaking and entering to have been done with the intent to commit rape upon Mrs. Lewis before they would be authorized to accept *506 as full confession of guilt, his admission that he was guilty, as charged in the warrant.
During the progress of the trial, the jury were, by the officers haying them in charge, permitted to' separate and mingle and converse with other citizens.
These facts, coming to- the knowledge of the judge presiding at the trial, after a good portion of the evidence had been heard, upon meeting of the court in evening session, he stated .that the jurors .had separated and held conversations with outsiders, and asked defendant’s counsel “what course they would pursue in the matter, whether the jury should be discharged, and a mistrial entered?” Defendant, by his counsel, replied that “he neither gave his consent, nor objected to a discharge of the jury, nor did he wish to waive any rights of his- from the conduct of the jury.” The trial then proceeded.
For the state, it is argued that this was, in effect, a waiver of exceptions on account of tire separation of the jury, and that the prisoner had no right to take the chance of an acquittal, with the certainty of a new trial, in the event of conviction, and the cases of Jarnagin v. The State, 10 Yer., 530, and Norfleet v. The State, 4 Sneed, 340, are cited as authority in support of these propositions.
In the first named case, after the jury was sworn but before any evidence had been heard by them, the attorney-general suggested to- the court that one of the jurors- who had verified his qualifications in the usual manner, was not a freeholder or householder, and moved that another juror be substituted in his place. To this substitution of another juror the prosecutor objected, and it was held that he could not urge as error the sitting of that juror on the trial.
In another case a juror was regularly elected, and shortly after taking his seat in the jury box, and before the jury was made up, he stated to the court that he remembered that he had formed and expressed an opinion. Thereupon, the court asked the counsel for the prisoner “what step they *507 proposed to take,” to which they replied, “they had nothing to say.” The court thereupon discharged the juror, allowing the prisoner the same number of challenges as if the juror, had been challenged for cause.
It was held that although it was error in the court to discharge the juror without further inquiry as to the foundation of his opinion, still the prisoner could not avail himself of such error after verdict under such circumstances.
The question in these cases had relation only to the manner of making up the jury, with nothing in the facts casting any imputation or suspicion upon the jury empaneled.
In this case the objection taken is of a different and much graver character.
The jurors separated and held conversations with other citizens during the progress of the trial. It has been held in numerous cases in this state that such separation and communication with other persons than members of the jury, or their officer, if unexplained, will vitiate the verdict and entitle the prisoner to a new trial. And the prisoner is not bound to show that the jury had been tampered with, it being sufficient that they might have been. [McLain v. State], 10 Yer., 241; [Stone v. State], 4 Hum., 27.
A sufficient explanation would be to show by evidence other than that of the offending juror, that the jurors had no communication with other persons, or that the communication was not upon the subject of the trial, but upon other and different subjects. But if no such explanation is given, a new trial will be granted. [Hines v. State], 8 Hum., 597; [Luster v. State], 11 Hum., 169; [Wesley v. State], 11 Hum., 502; [Pritchett v. State], 2 Sneed, 285; [Riley v. State], 9 Hum., 646.
The prisoner had no control of the jury, and was in no wise responsible for their separation. He expressly declined to waive any exception to the misconduct of the *508 jury if it should thereafter he made to appear that they had been guilty of any, as announced by the court, nor could it he certainly known whether the mere- fact of separation and communication with other persons would turn out to he fatal to the validity of a verdict of g’uilty, if such a verdict should he rendered hy them. Their separation and communications, so far as then known, might not he of such character as to vitiate their verdict. The law allowed them and the state to explain the causes of their separation and the nature of their communications with others. If these were such as not to indicate their verdict of guilty, their finding, so far as this objection is concerned, would have been sustained. On the other hand, if they were tampered with, which the law in effect, presumes in the absence of explanation, a verdict of guilty ought not and will not he permitted to stand.
It was not, therefore, a case in which the prisoner had a certain assurance of a new trial, in the event of conviction, hut a case in which a valid correction might have been had in the event the jury co-uld show they had not been tampered with.
The evidence shows the separation and intercourse of jurors with other citizens, which is not explained, and for this reason a new trial must he granted.
Reverse the judgment, and remand the prisoner.